IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
Northern Division

**CHEYENNE SHONGO, individually and**
**On behalf of all other similarly situated people**
1608 Hazel Street
Baltimore, MD 21226                               Case No:

AND

**KENNETT WALKER, individually and**
**On behalf of all other similarly situated people**
4226 Prudence Street
Baltimore, MD 21226

       Plaintiffs,

v.

**CSX TRANSPORTATION, INC.**
100 North Charles Street
Baltimore, MD 21201

    <u>Serve:</u>
    Corporation Trust, Incorporated
    2405 York Road
    Suite 201
    Lutherville, MD 21093

       Defendant.

## CLASS ACTION COMPLAINT

***COME NOW*** Plaintiffs, by and through undersigned counsel, and make this Class Action Complaint against Defendant CSX Transportation, Inc. and state the following:

## JURISDICTION

1. This Court has subject matter jurisdiction pursuant to 28 USC § 1332.

2. This Court has personal jurisdiction over Defendant pursuant to Md. Code Ann., Cts. & Jud. Proc. § 6-102 and 6-103.

3. Venue lies in this court as the cause of action arose in Baltimore City, Maryland.

**PARTIES**

4. Plaintiff Cheyenne Shongo is an adult citizen of the State of Maryland who resides at 1608 Hazel Street, Baltimore, Maryland and has done so at all relevant times.

5. Plaintiff Kennett Walker is an adult citizen of the State of Maryland who resides at 4226 Prudence Street, Baltimore, Maryland and has done so at all relevant times.

6. Defendant CSX Transportation, Inc. ("CSX") is a corporation which has a principal place of business in the State of Florida and incorporated in the Commonwealth of Virginia. Defendant CSX is domiciled and at home in both Florida and Virginia for the purposes of diversity.

**FACTS COMMON TO ALL CLAIMS**

7. CSX owns and operates the Curtis Bay Piers Coal Facility at 1910 Benhill Ave, Baltimore, MD 21226.

8. The Curtis Bay Piers Coal Facility is comprised of incoming and outgoing rail service, a railyard, a coal transfer yard, railcar offloading infrastructure, conveyor infrastructure, pier loading facilities, and associated office, maintenance, and operations buildings.

9. The coal transfer yard is in the middle of the facility and is comprised of 8 primary stacking tubes (towers) which characterize the appearance of the facility.

10. The transfer yard collects incoming coal into piles created by transferring the coal along conveyors at the tops of the stacking tubes, down through the tubes, and into piles.

11. There are five primary stacking tubes on the north side, and three on the south side of the transfer yard.

12. In between the north and south sides of the transfer yard is a central transfer tower which contains conveyor infrastructure capable of diverting coal a number of different ways.

13. The coal from these piles is transferred to the conveyor system in the tunnel through the use of vibrating feeders mounted to openings in the yard surface.

14. The North Reclaim Tunnel of the facility is comprised of an approximately 770-foot-long concrete tunnel running from north to south.

15. An approximately 147-foot concrete escape tunnel extends westward from the north end of the North Reclaim Tunnel (hereafter, "North Escape Tunnel").

16. The North Reclaim Tunnel contained coal feeders, conveyor structure, and associated equipment.

17. On December 30, 2021, at approximately 11:24 AM US Eastern Standard Time, an explosion occurred in the North Reclaim Tunnel of the Curtis Bay Piers (CBP) Coal Facility in Baltimore, Maryland (hereafter, "the facility").

18. The explosion occurred on the north side of the transfer yard, within the North Reclaim Tunnel, which lies directly underneath the yard surface, upon which coal piles are formed.

19. Video footage of the explosion was collected from both on- and off-site sources, and demonstrated massive explosion transferring off-site.

20. The origin of the explosion was between feeders 7 and 17 within the North Reclaim Tunnel and likely was initiated by the ignition of a localized flammable atmosphere comprised of methane released from the coal, and a relatively low concentration of coal dust made airborne by the operating conveyor, which enhanced the flammability of the released methane.

21. This localized atmosphere was made possible by low ventilation rates, which did not allow for adequate dissipation and removal of methane and coal dust. This initial combustion

event generated a pressure wave travelling both north and south through the North Reclaim Tunnel that increased the quantity and density of airborne coal dust within the tunnel.

22. This coal dust fueled further combustion through the tunnel and out of the south surface entrance and North Escape Tunnel of the North Reclaim Tunnel.

23. Combustion and blast pressures increased along the tunnel's length, resulting in the visible plume that exited the south surface entrance, and migrated off-site into the surrounding neighborhood and onto Plaintiffs' properties.

24. Plaintiffs and the class members reside within the Class Area depicted below and saw their homes blanketed in coal dust following the explosion.

25. The migration of coal dust from the Curtis Bay Facility included the migration of dangerous and/or carcinogenic substances including lead, arsenic, silica and/or particulate matter.

26. Plaintiffs and the proposed class members were caused to inhale these substances that migrated from Defendant's Curtis Bay Facility onto their properties.

27. Plaintiffs further resided in their homes where these substances, and others, settled and required and continue to require cleanup before these residences can be made safe.

## CLASS ACTION ALLEGATIONS

28. Plaintiffs bring this action as a class action pursuant to the Federal Rule of Civil Procedure 23 and on behalf of the classes.

29. Plaintiffs propose the following class:

### THE CLASS

**All persons who resided within the class area depicted below on or since December 30, 2021.**



30. Excluded from the Classes are Defendant, the officers, members, and directors of Defendants, members of their immediate families and their legal representatives, heirs, successors, or assigns, and any entity in which Defendant have or had a controlling interest.

31. The proposed class is believed to be so numerous that joinder of all members is impracticable. The exact number of members of the Class is unknown to Plaintiffs at this time and can only be ascertained through appropriate discovery. The proposed Class is believed to be ascertainable in that the names and addresses of all members of the Class can be identified in business records maintained by Defendants.

32. Plaintiffs' claims are typical of the claims of the members of the Class because Plaintiffs' and all Class members' claims originate from the same conduct, practice and procedure on the part of Defendant and Plaintiffs possess the same interests and have suffered the same injuries as each member of the Class they seek to represent.

33. Plaintiffs will fairly and adequately protect the interests of the members of the Class and have retained counsel experienced and competent in class action litigation. Plaintiffs have no interests that are contrary to or in conflict with the members of the Class that Plaintiffs seeks to represent.

34. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy, since joinder of all members is impracticable. Furthermore, as the damages suffered by individual members of the Class may be relatively small, the expense and burden of individual litigation may make it impracticable for the members of the Class to individually redress the wrongs done to them. There should be no difficulty in the management of this action as a class action.

35. Issues of law and fact common to the members of the Class predominate over any questions that may affect only individual members, in that Defendant has acted on grounds generally applicable to the entire Class. Among the issues of law and fact common to the Class are:

    a. How the explosion occurred;
    b. Whether the explosion caused the migration of contaminants off-site;
    c. The cause of the explosion;
    d. Whether the Defendant negligently caused the explosion;
    e. Whether the Defendant committed a trespass;
    f. Whether the Defendant caused a private nuisance;
    g. Whether medical monitoring is required; and
    h. Other common question of fact and law.

36. Upon information and belief, absent a class action, Defendant's tortious failures will be without a full, fair, and judicially supervised remedy.

37. Inclusive in this request for class action treatment, Plaintiffs specifically seek an injunction causing the creation of a medical monitoring fund pursuant to Federal Rule 23(b)(2) as the proposed class and their claims are sufficiently cohesive to employ the class action device.

38. Plaintiffs reserve the right to revise Class definitions and questions based upon facts learned in discovery.

## CAUSES OF ACTION

39. Plaintiffs bring each of the following causes of action on behalf themselves individually and the Class:

## NEGLIGENCE
### Count I

40. Each of the preceding paragraphs is incorporated by reference herein.

41. At all relevant times, Defendant owed a duty of care to operate, supervise and maintain the Curtis Bay Facility with reasonable care under the circumstances.

42. Instead, Defendant breached that duty by negligently and improperly operating, supervising, and/or maintaining the Curtis Bay Facility in such a manner that proximately caused the release of coal dust and dangerous contaminants that blanketed the Class Area.

43. Defendant's negligence directly and proximately resulted in unreasonable release of coal dust and other dangerous contaminants.

44. Defendant failed to exercise its duty of ordinary and reasonable care, including to Plaintiffs and class members, in the staffing, management, oversight, maintenance, and operation of the Curtis Bay Facility.

45. These failures include but are not limited to:

    a. Inadequate control of the Facility;
    b. Inadequate staffing of the Facility;

  c. Failing to comply with stated permit requirements and conditions;

  d. Otherwise being negligent.

46. As a direct and proximate result of Defendants' collective failure to exercise ordinary and reasonable care, Plaintiffs' and Class Members suffered damages, including but not limited to property damage and the need for medical monitoring as stated below.

## TRESPASS
## Count II

47. Each of the preceding paragraphs is incorporated by reference herein.

48. Defendant's operation, maintenance, and staffing of the Curtis Bay Facility has caused, and continues to cause, the release of poisonous and carcinogenic chemicals onto Plaintiffs' and the class members' properties through air particles.

49. Defendant's conduct that resulted in the intrusion onto Plaintiffs' and the class members' properties was knowing, intentional, and reckless.

50. Plaintiffs and class members did not consent to the intrusion onto their properties.

51. Defendant's conduct has caused damage to Plaintiffs and the class members including but not limited to property damage and the need for medical monitoring.

52. Defendant's conduct constitutes a trespass for which Defendant is liable to Plaintiffs and class members for all damages arising from such trespass, including compensatory relief and medical monitoring.

## PRIVATE NUISANCE
## Count III

53. Each of the preceding paragraphs is incorporate by reference herein.

54. Plaintiffs and the proposed class members are lawful residents on real property within the class area.

55. Defendant's intentional and unreasonable operation, maintenance, and staffing of the Curtis Bay Facility caused the release of dangerous and carcinogenic chemicals and noxious odors into the surrounding community and the Class Area.

56. As a direct and proximate result of releases from the Plant, Plaintiffs and class members have suffered substantial and unreasonable impacts including discomfort so as to be unable to fully and safely use and enjoy their property.

57. Defendant's substantial and unreasonable interference with Plaintiffs' and class members' use and enjoyment of their property constitutes a nuisance for which Defendant is liable to Plaintiffs and class members for all damages arising from such nuisance, including compensatory relief and medical monitoring.

58. The unreasonable interference with Plaintiffs' and class members' use and enjoyment of their properties outweighs any social utility that Defendant's actions and operations may have.

**STRICT LIABILITY – ABNORMALLY DANGEROUS ACTIVITY**
Count IV

59. Each of the preceding paragraphs is incorporated herein.

60. Defendant is the owner and/or occupier of Curtis Bay Piers Coal Facility at 1910 Benhill Ave, Baltimore, MD 21226.

61. The Facility is located directly adjacent to a residential neighborhood, including Plaintiffs and the proposed class members' residences.

62. The collection, migration, management and handling of flammable coal and related material, as well as the operations related to the collection, migration, management and handling of coal is an abnormally dangerous activity, particularly due to the proximity to a the residential area in which it is located.

63. These activities at the Curtis Bay Facility owned, occupied and managed by Defendant involve a high degree of risk of some harm to the person, land or chattels of others, including Plaintiffs and the proposed class members.

64. The gravity of the harm which may result from it is likely to be great and includes increased risk of serious medical injury and the development of disease or death.

65. These risks cannot be eliminated by the exercise of reasonable care.

66. The activities at the Curtis Bay Facility are not matters of common usage and are inappropriate to the place where they are carried on.

67. And these risks do not outweigh any perceived value of the activity to the community.

68. As such, Defendant is strictly liable for harm and damage caused to Plaintiffs and the proposed class members as set out below.

## DAMAGES AND PRAYER FOR RELIEF

69. Each of the preceding paragraphs is incorporated by reference herein.

70. Plaintiffs have suffered actual harm and damages in the form of migration of dangerous and carcinogenic substances from Defendant's Curtis Bay Facility onto their properties, including the ambient air on their properties.

71. The presence of this contamination has caused the loss of value of both real property and personal property.

72. The exposures caused by this migration necessitate medical monitoring for the class as Plaintiffs and the class were significant exposed to proven hazardous substances, including coal dust, lead, arsenic, silica and particulate matter; as a proximate result of the exposure Plaintiffs and the proposed class members suffer a significantly increased risk of contracting latent diseases including cancer, lead poisoning, coal works pneumoconiosis,

and other serious diseases; this increased risk makes periodic diagnostic examination reasonably necessary; and these monitoring and testing procedures exist and make early detection of these diseases beneficial.

73. **WHEREFORE,** Plaintiffs seek the following damages in excess of $5,000,000.00 and pray for the following relief:

    a. An order pursuant to Fed. R. Civ. P. 23 designating Plaintiffs as representatives of the proposed class and designation of the Plaintiffs' counsel as class counsel;

    b. Judgment in favor of Plaintiffs and class members against Defendant;

    c. All damages allowable by law;

    d. An injunction requiring adequate staffing and training of all staff at Curtis Bay Facility;

    e. An injunction and/or the exercise of the Court's equitable powers establishing a fund to be administered by a Court appointed trustee at the expense of the Defendant providing the service of monitoring members of the proposed class area for the presence of coal dust, lead, silica, arsenic and particulate matter;

    f. Damages associated with medical monitoring for Plaintiffs and the class members;

    g. All pre and post-judgment interest allowable by law.

        Respectfully submitted,

        **Nidel & Nace, P.L.L.C.**

        */s/ Jonathan Nace*
        Jonathan Nace, Esquire
        Bar Number: 18246
        One Church Street
        Suite 802
        Rockville, MD 20850

Telephone: (202) 780-5153
jon@nidellaw.com

**DEMAND FOR JURY TRIAL**

Plaintiffs hereby demand a trial by jury on all issues pursuant to Federal Rule of Civil Procedure 38.

*/s/ Jonathan Nace*
Jonathan Nace, Esquire