## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

CHEYENNE SHONGO, *et al.*,       *

     *Plaintiffs*,       *

     v.       *       Civil No. RDB-22-2684

CSX TRANSPORTATION, INC.,       *

     *Defendant*.       *

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

### MEMORANDUM OPINION

On December 30, 2021, there was an explosion in the North Reclaim Tunnel of the Curtis Bay Piers Coal Facility ("Curtis Bay") in Baltimore, Maryland. (*See* Compl. ¶ 17, ECF No. 1.) In this putative class action, Plaintiffs Cheyenne Shongo and Kennett Walker allege that this explosion "blanketed" their homes and properties in coal dust, and exposed them to contaminants associated with "cancer, lead poisoning, coal works pneumoconiosis, and other serious diseases." (*Id.* ¶¶ 4–5, 24, 72.) On behalf of themselves and others similarly situated, Plaintiffs filed suit against Defendant CSX Transportation, Inc. ("CSX"), the owner and operator of the Curtis Bay facility, alleging negligence, trespass, nuisance, and strict liability under Maryland law. (*Id.* ¶¶ 6, 39–68.) They seek an injunction requiring adequate staffing and training at Curtis Bay, the establishment of an equitable fund for medical monitoring, and property damages. (*Id.* ¶¶ 69–73.)

Now pending is CSX's Motion to Dismiss (ECF No. 23). CSX seeks the dismissal of all four tort claims with prejudice, and moves to dismiss the class allegations in the alternative. (Def.'s Mem. Supp. 1–2, ECF No. 23-1.) The parties' submissions have been reviewed and no

hearing is necessary. *See* Local Rule 105.6 (D. Md. 2021). For the reasons that follow, CSX's Motion to Dismiss is hereby **DENIED.**

## BACKGROUND

The Curtis Bay Coal Piers Facility ("Curtis Bay" or the "Facility") is a coal transfer facility located at 1910 Benhill Ave, Baltimore, MD 21226. (Compl. ¶¶ 7–8.) According to the Complaint, Curtis Bay "is comprised of incoming and outgoing rail service, a railyard, a coal transfer yard, railcar offloading infrastructure, conveyor infrastructure, pier loading facilities, and associated office, maintenance, and operations buildings." (*Id.* ¶ 8.) During the Facility's ordinary operations, shipments of coal arriving at Curtis Bay are transferred along conveyors, distributed through one of eight stacking tubes, and collected into piles in the transfer yard. (*Id.* ¶¶ 10–11.) Coal collected in the transfer yard is then diverted into reclaim tunnels through vibrating feeders set into the ground. (*Id.* ¶¶ 12–13.)

This case arises from an explosion that occurred in the Northern Reclaim Tunnel, a 770-foot concrete tunnel that runs from north to south directly beneath the transfer yard, and is lined with coal feeders, conveyors, and related equipment. (*Id.* ¶¶ 14, 16–18.) Plaintiffs allege that methane and coal dust accumulated in the North Reclaim Tunnel between feeders 7 and 17, creating "a localized flammable atmosphere," which was aggravated and enhanced by poor ventilation that prevented the confluence of flammable gases from dissipating. (*Id.* ¶¶ 20–21.) On December 30, 2021, these gases combusted, generating "a pressure wave" that collected coal dust as it ran along the tunnel. (*Id.* ¶¶ 21–23.) The outcome was a "massive explosion," producing a plume that erupted out of the northern escape tunnel and south surface entrance, scattering pollutants into the air. (*Id.* ¶¶ 19, 21–23.)

2

The Curtis Bay Facility "is located directly adjacent to a residential neighborhood," where the Plaintiffs and the putative class members reside. (*Id.* ¶¶ 24, 61.) According to the Complaint, "Plaintiffs and the class members . . . saw their homes blanketed in coal dust following the explosion." (*Id.* ¶ 24.) Plaintiffs allege that the dust and contamination released by the explosion settled onto the ground and requires further cleanup before their residences can be made safe. (*Id.* ¶ 27.) They further allege that the explosion released "dangerous and/or carcinogenic substances including lead, arsenic, silica and/or particulate matter," (*id.* ¶ 25), and that the proposed class members "were caused to inhale these substances," exposing them to "a significantly increased risk of contracting latent diseases including cancer, lead poisoning, coal works pneumoconiosis, and other serious diseases," (*id.* ¶ 26).

Plaintiffs filed suit on October 18, 2022, bringing Maryland tort claims on behalf of a putative class of individuals that Plaintiffs claim were exposed to the same pollutants by the explosion at Curtis Bay. (*Id.* ¶¶ 28–29.) CSX has moved to dismiss the Complaint for failure to state a claim and seeks to dismiss or strike Plaintiffs' classwide allegations in the alternative. (*See* Def.'s Mot. Dismiss, ECF No. 23.) This motion is ripe for review.

## STANDARD OF REVIEW

Under Rule 8(a)(2) of the Federal Rules of Civil Procedure, a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P 8(a)(2). Rule 12(b)(6) of the Federal Rules of Civil Procedure authorizes the dismissal of a complaint if it fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). The purpose of Rule 12(b)(6) is "to test the sufficiency of a complaint and not to resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses."

*Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006) (quoting *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999)) (internal quotation marks omitted).

To survive a motion under Fed. R. Civ. P. 12(b)(6), a complaint must contain facts sufficient to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl., Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Under the plausibility standard, a complaint must contain "more than labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555; *see Painter's Mill Grille, LLC v. Brown*, 716 F.3d 342, 350 (4th Cir. 2013). A complaint need not include "detailed factual allegations." *Twombly*, 550 U.S. at 555. A complaint must, however, set forth "enough factual matter (taken as true) to suggest" a cognizable cause of action, "even if . . . [the] actual proof of those facts is improbable, and that a recovery is very remote and unlikely." *Id.* at 556 (internal quotations omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678; *see A Soc'y Without a Name v. Virginia*, 655 F.3d 342, 346 (4th. Cir. 2011).

## ANALYSIS

Plaintiffs bring this litigation on behalf of a putative class, defined as the residents of a neighborhood adjacent the Curtis Bay Facility that was blanketed in coal dust by the explosion. In their four-count Complaint, they raise four tort claims under Maryland law:[1] (1) negligence (Count I); (2) trespass (Count II); (3) private nuisance (Count III); and (4) strict liability for

---

[1] As the basis of this Court's jurisdiction is diversity of citizenship under 28 U.S.C. § 1332(a), Maryland law applies. *Hartford Fire Ins. Co. v. Harleysville Mut. Ins. Co.*, 736 F.3d 255, 261 n.3 (4th Cir. 2013) ("Federal courts sitting in diversity apply federal procedural law and state substantive law." (citing *Gasperini v. Ctr. For Humanities, Inc.*, 518 U.S. 415, 427 (1996))).

abnormally dangerous activities (Count IV). (*See* Compl. ¶¶ 39–68.) CSX seeks the dismissal with prejudice of all four counts, and alternatively argues that the proposed class is impossible to certify. (Def.'s Mem. Supp. 1–2.) For the reasons detailed below, CSX's Motion to Dismiss (ECF No. 23) is hereby **DENIED** on all grounds.

## I.    Negligence

Plaintiffs allege that the explosion at Curtis Bay was the result of CSX's negligent staffing, operation, and maintenance of the Facility. (Compl. ¶¶ 40–46.) "The elements of a cause of action in negligence are well-established." *Horridge v. St. Mary's Cnty. Dep't of Social Servs.*, 854 A.2d 1232, 1238 (Md. 2004). To state a negligence claim, the plaintiff must allege the following four elements: "(1) that the defendant was under a duty to protect the plaintiff from injury, (2) that the defendant breached that duty, (3) that the plaintiff suffered actual injury or loss, and (4) that the loss or injury proximately resulted from the defendant's breach of the duty." *Lloyd v. Gen. Motors Corp.*, 916 A.2d 257, 270–71 (Md. 2007) (quoting *Valentine v. On Target*, 727 A.2d 947, 949 (Md. 1999)).

Plaintiffs claim that CSX had a duty to operate, supervise, and maintain the Facility with reasonable care under the circumstances. (Compl. ¶ 41.) They allege that CSX breached this duty by failing to adequately staff, operate, and maintain the facility, and failing to comply with permit requirements. (*Id.* ¶¶ 44–45.) They also contend that this negligence resulted in the explosion, and that the release of coal dust and contaminants into the community caused class members three types of harm: (1) personal injury through the inhalation of contaminants; (2) damage to residential properties that were blanketed by coal dust and contaminants; and (3) personal property damage. (*Id.* ¶¶ 23–27, 43, 45.) CSX does not challenge duty, breach, or

causation, and solely asserts that Plaintiffs have not plausibly alleged an "actual injury or loss." (Def.'s Mem. Supp. 4; Def.'s Repl. Supp. 2–4, ECF No. 28.)

Plaintiffs allege at least two forms of harm resulting from the explosion at Curtis Bay. First, Plaintiffs allege that the explosion "blanketed" their homes in contaminants, diminishing the value of their properties. (Compl. ¶¶ 24–27, 46, 51–52, 70–71.) CSX argues that Plaintiffs cannot allege damage to real property, as they do not claim that they own the properties affected by the explosion. *See Exxon Mobil Corp. v. Albright*, 71 A.3d 30, 89 n.84 (Md. 2013) (noting that "diminution in value damages are available only where the injury to real property is permanent," and that "damages for permanent injury to real property are generally available only to the owners of real property"). However, the Complaint alleges that coal dust was blown "onto Plaintiffs' properties," (Compl. ¶ 23), and that "Plaintiffs and the class members reside within the Class Area . . . and saw their homes blanketed in coal dust following the explosion," (*id.* ¶¶ 24, 27, 54, 61).[2] Viewing the Complaint in the light most favorable to Plaintiffs and drawing all reasonable inferences in their favor, Plaintiffs' repeated assertion that they "reside" near the Facility and that coal dust was blown onto their "homes" and "properties" is sufficient to plausibly allege that they own the properties at issue.

Moreover, even if property damage was not adequately pled, Plaintiffs plausibly allege that they were personally exposed to contaminants. Specifically, Plaintiffs allege that they inhaled toxic chemicals including "coal dust, lead, arsenic, silica and particulate matter," increasing their "risk of contracting latent diseases including cancer, lead poisoning, coal works

---

[2] The Complaint specifically provides that Plaintiff Cheyenne Shongo resides at 1608 Hazel Street, Baltimore, MD, (*id.* ¶ 4), and that Plaintiff Kennett Walker resides at 4226 Prudence Street, Baltimore, MD, (*id.* ¶ 5).

pneumoconiosis, and other serious diseases." (Compl. ¶ 72.) CSX argues that Plaintiffs fail to allege that they actually inhaled these pollutants, or that they were in the vicinity of Curtis Bay on the day of the explosion. However, the Complaint directly states that the Plaintiffs and the class members "were caused to inhale [the] substances that migrated from Defendants' Curtis Bay Facility onto their properties," (*id.* ¶ 26), and further provides that the Plaintiffs and the class members reside in the area blanketed by the explosion, (*id.* ¶¶ 4–5, 24, 54), that the coal dust included dangerous, carcinogenic materials, (*id.* ¶ 25, 42, 70), and that these contaminants have lingered and are not fully remediated, (*id.* ¶¶ 27, 48). Taken together, and construed in Plaintiffs' favor, these allegations plausibly suggest that Plaintiffs inhaled the toxins released by the explosion—whether on the day of the explosion or sometime thereafter. Accordingly, CSX's Motion to Dismiss is **DENIED** as to Count I.

## II.    Trespass

In Count II, Plaintiffs allege that the explosion caused a trespass by spreading toxic coal dust onto their properties. (*Id.* ¶¶ 47–52.) "[T]respass is generally defined as 'an intentional or negligent intrusion upon or to the possessory interest in property of another.'" *Uthus v. Valley Mill Camp., Inc.*, 246 A.3d 1225, 1239 (Md. 2021) (quoting *Litz v. Maryland Dep't of Env't*, 131 A.3d 923, 936 (Md. 2016)). A trespass occurs "[w]hen a defendant interferes with a plaintiff's interest in the exclusive possession of the land by entering or causing something to enter the land." *Rosenblatt v. Exxon Co., U.S.A.*, 642 A.2d 180, 189 (Md. 1994). To state a trespass claim under Maryland law, a plaintiff must plausibly allege "(1) an interference with a possessory interest in [her] property; (2) through the defendant's physical act or force against that property; (3) which was executed without [her] consent." *Uthus*, 246 A.3d at 1239 (citation

omitted); *Brazerol v. Hudson*, 277 A.2d 585, 587 (Md. 1971) ("Every unauthorized entry upon the property of another is a trespass which entitles the owner to a verdict for some damages." (quoting *Patapsco Loan Co. v. Hobbs*, 98 A. 239, 241 (Md. 1916))).

Plaintiffs allege that CSX caused "the release of poisonous and carcinogenic chemicals onto Plaintiffs' and the class members' properties through air particles." (Compl. ¶¶ 48–51.) Reading the Complaint holistically, they allege that the explosion at Curtis Bay "blanketed" their properties with a layer of "coal dust" containing "dangerous and/or carcinogenic substances including lead, arsenic, silica, and/or particulate matter" that has made their homes unsafe to occupy. (*Id.* ¶¶ 24–27.) CSX argues that Maryland does not recognize trespass by "'soot and ash' and 'smoke and . . . particulate fallout,'" mandating the dismissal of this Count as a matter of law.[3] (Def.'s Mem. Supp. 5 (internal citation omitted).)

Plaintiffs cannot sustain a trespass claim under Maryland law based solely on an invasion of their property by air particles. "Traditionally, courts held that . . . a defendant's act must cause an invasion of the plaintiff's property by some tangible matter." *Schuman v. Greenbelt Homes, Inc.*, 69 A.3d 512, 526 (Md. Ct. Spec. App. 2013) (quoting *John Larkin Inc. v. Marceau*, 959 A.2d 551, 554 (Vt. 2008)). "Thus, intangible intrusions like smoke, odor, light and noise are not typically actionable under a trespass theory." *Id.*; *see also In re Methyl Tertiary Butyl Ether ("MTBE") Prods. Liab. Litig.*, 457 F. Supp. 2d 298, 314 (S.D.N.Y. 2006) ("Historically, an invasion by smoke, dust or invisible particles was not considered trespass because this type of

---

[3] CSX also argues that Plaintiffs have not alleged an interest in the exclusive possession of land. However, as discussed above, Plaintiffs allege throughout the Complaint that they "are lawful residents on real property within the class area," and that their "homes" and "properties" were covered in coal dust. (*Id.* ¶¶ 23–27, 54, 61.) Construed in Plaintiffs' favor, these allegations support an inference that Plaintiffs have an exclusive possessory interest in their homes.

invasion was not considered a 'physical' invasion 'in the primitive society where trespass had its roots.'" (quoting Fowler V. Harper, Fleming James, Jr., Oscar S. Gray, The Law of Torts ¶ 1.1 (3d ed. 1996))). *But see Rockland Bleach & Dye Works Co. v. H.J. Williams Corp.*, 219 A.2d 48, 54 (Md. 1966) (suggesting, in the analysis of a separate legal issue, that a trespass claim may succeed "when an adjacent property is invaded by an inanimate or intangible object" under the defendant's control).

However, Plaintiffs do not merely claim that their properties were invaded by invisible particles—they allege that their properties were "blanketed" by toxic coal dust. (Compl. ¶ 24.) As both parties acknowledge, the Maryland appellate courts have not precisely addressed whether fallout of this nature constitutes a tangible intrusion that may sustain a trespass claim. (Mem. Supp. 5–6; Resp. Opp. 8, ECF No. 26-1.) *See JBG/Twinbrook Metro Ltd. v. Wheeler*, 697 A.2d 898, 907 n.12 (Md. 1997).[4] Accordingly, this Court must predict how the Supreme Court of Maryland would decide this issue under the applicable principles of Maryland law. *See, e.g., McKiver v. Murphy-Brown, LLC*, 980 F.3d 937, 963 (4th Cir. 2020).[5] This Court predicts that the

---

[4] Plaintiffs cite several Maryland cases for the proposition that the Maryland appellate courts have recognized a theory of trespass by air particulates, but all are inapposite. In *Hoffman v. United Iron*, 671 A.2d 55 (Md. Ct. Spec. App. 1996), the Court of Special Appeals reversed the dismissal of a trespass claim based only on lead contamination, and a *nuisance* claim based on "black smoke, soot, dust, and 'fluff.'" 671 A.2d at 60, 67 n.16, 70–72. In *Hanna v. ARE Acquisitions, LLC*, 929 A.2d 892 (Md. 2007) and *Rosenblatt v. Exxon Co., U.S.A.*, 642 A.2d 180 (Md. 1994), the Court of Appeals dismissed trespass claims that were based on "extensive petroleum contamination" after finding that contamination by a former occupant of land could not support a trespass claim by a subsequent purchaser. *Rosenblatt*, 642 A.2d at 182, 189–90; *see also Hanna*, 929 A.2d at 896. None of these cases addressed whether intrusions such as air particles, or the coal dust at issue here, are tangible enough to interfere with a plaintiff's right to exclusive possession of their land.

[5] CSX insists that the absence of conclusive Maryland authority requires the dismissal of this Count, as federal courts must "'respond conservatively when asked to discern governing principles of state law' and take care to avoid interpreting that law in a manner that 'has not been approved'" by the state courts. *Knibbs v. Momphard*, 30 F.4th 200, 213 (4th Cir. 2022) (quoting *Rhodes v. E.I. du Pont de Nemours & Co.*, 636 F.3d 88, 96 (4th Cir. 2011)). However, "in a situation where the [state's highest

Supreme Court of Maryland would hold that an explosion that blankets a property in a layer of noxious coal dust effects a tangible interference with the owner's or leaseholder's interest in the exclusive possession of their land.

The alleged "blanketing" of plaintiffs' properties with a layer of coal dust is more tangible than an invasion by "smoke, odor, light, and noise." *Schuman*, 69 A.3d at 526. Other states have reasoned that the deposition of residue in significant sizes or quantities may be sufficiently tangible to sustain a trespass claim. *See, e.g.*, *Bell v. WestRock CP, LLC*, No. 3:17-cv-829, 2018 WL 3493077, at *3 (E.D. Va. Jul. 20, 2018) (canvassing Virginia law, and finding trespass claim plausible where defendant maintained wood piles that released wood dust onto plaintiffs' property); *Grant v. E.I. Du Pont De Nemours & Co., Inc.*, No. 4:91-CV-55-H, 1995 WL 18239435, at *4 (E.D.N.C. Jul. 14, 1995) (reviewing North Carolina law, and concluding that "[a]n action for trespass will lie where an airborne substance, such as dust, actually comes to rest on a plaintiff's property"). Maryland courts would likely reach a similar conclusion here. Plaintiffs claim that an explosion at the Curtis Bay Facility spread a layer of coal dust across their properties and contaminated their homes. If the explosion had scattered rocks, debris, or shrapnel onto their properties, the presence of those objects would interfere with plaintiffs' interest in the exclusive possession of their land. A visible "blanketing" of coal dust is not any less tangible merely because the size of the debris particles is smaller.[6]

---

court] has spoken neither directly nor indirectly on the particular issue," this Court must "predict how that court would rule if presented with the issue." *McKiver*, 980 F.3d at 964 (quoting *Private Mortg. Inv. Servs., Inc. v. Hotel & Club Assocs., Inc.*, 296 F.3d 308, 312 (4th Cir. 2002)) (alteration in original). Although the Maryland courts have not conclusively held that the "blanketing" of a plaintiff's property with coal dust constitutes a trespass, neither have they foreclosed such a claim.

[6] CSX cites two previous decisions of this Court for the proposition that an invasion of soot or pollutants deposited by gas or smoke interferes merely with a plaintiff's "use and enjoyment" of their land, not their "exclusive possessory interest." *See Nissan Motor Corp. in U.S.A. v. Maryland*

Moreover, the Maryland courts would likely recognize that the alleged contamination of Plaintiffs' property by "dangerous and carcinogenic" materials is an actionable trespass. (Compl. ¶ 71.) *See Albright*, 71 A.3d at 94 ("[R]ecovery for trespass requires that the defendant must have entered or caused something harmful or noxious to enter onto the plaintiff's land."). This Court has previously allowed trespass claims to proceed under Maryland law based on contamination that was spread onto the plaintiff's property through waterways. *See Mayor and City Council of Balt. v. Monsanto*, No. RDB-19-0483, 2020 WL 1529014, at *11–12 (D. Md. 2020) (contamination by PCBs); *State v. Exxon Mobil Corp.*, 406 F. Supp. 3d 420, 471 (D. Md. 2019) (Hollander, J.) (contamination by MTBE). The Maryland appellate courts have done the same. *See, e.g., Albright*, 71 A.3d at 38, 45–47 (contamination by MBTE); *Hoffman*, 671 A.2d at 67 n.16 (contamination by lead). There is no reason why a different result should obtain when similar contaminants are deposited onto a plaintiff's land following an explosion. And that is particularly true when the residue associated with this contamination—coal dust—is visible, tangible, and easy to detect. *Cf. Albright*, 71 A.3d at 91 (holding that appellees who could not detect contaminants in their groundwater could not recover on theory of trespass).

In the alternative, at least one court has predicted that the Supreme Court of Maryland would "rely on the Restatement and modern tort law" to allow a claim of trespass by intangible matter if the plaintiff proves that the deposition of particulates caused "substantial damage to the [property]." *In re Methyl Tertiary Butyl Ether ("MTBE") Products Liab. Litig.*, 457 F. Supp. 2d

---

*Shipbuilding and Drydock Co.*, 544 F. Supp. 1104, 1116–17 (D. Md. 1982); *Adams v. NVR Homes, Inc.*, 193 F.R.D. 243, 255 (D. Md. 2000). However, *Nissan Motor Corp.* was a maritime case in which this Court concluded "that the Maryland law of trespass and nuisance should not be applied," 544 F. Supp. at 1112, and *Adams* principally addressed an invasion by "methane gas from adjoining properties," not a layer of coal dust deposited by an explosion, 193 F.R.D. at 255.

298, 315–16 (S.D.N.Y. 2006). In the *MTBE* litigation, the United States District Court for the Southern District of New York evaluated under Maryland law "whether invasion by invisible particles of MTBE beneath the earth may constitute a trespass." 457 F. Supp. 2d at 313. Observing that this issue has not been decisively answered by the Maryland appellate courts, the district court canvassed the approaches of other states and noted that "[m]odern scientific advances have caused many courts to abandon the notion that an invasion by smoke, dust, or particles is not 'physical,'" but that such cases typically require "proof of substantial damage" to the property. *Id.* at 314–15. As the court summarized:

> [I]f the smoke or polluting substance emitting from a defendant's operation causes discomfort and annoyance to the plaintiff in his use and enjoyment of the property, then the plaintiff's remedy is for nuisance; but if, as a result of the defendant's operation, the polluting substance is deposited upon the plaintiff's property, thus interfering with his exclusive possessory interest by causing substantial damage to the res, then the plaintiff may seek his remedy in trespass, though his alternative remedy in nuisance may co-exist.

*Id.* at 315 (alteration in original) (quoting *Maryland Heights Leasing, Inc. v. Mallinckrodt, Inc.*, 706 S.W.2d 218, 225 (Mo. Ct. App. 1985)). This Court finds the *MTBE* case persuasive and adopts its reasoning. Even if the Maryland courts would find that the blanketing of coal dust and contaminants is "intangible," Plaintiffs' assertion that their property has been damaged by the pollution would be sufficient to state a plausible trespass claim.

Plaintiffs allege that the explosion at the Curtis Bay Facility "blanketed" their homes in coal dust containing several dangerous and carcinogenic substances. (Compl. ¶¶ 23–26.) They claim that this contamination diminished the value of their land and rendered it unsafe until the pollution is remediated. (*Id.* ¶¶ 27, 70–71.) These allegations must be taken as true and viewed in the light most favorable to the Plaintiffs. *See, e.g., Edwards v. City of Goldsboro*, 178

F.3d 231, 244 (4th Cir. 1999). Although the Complaint does not specify the quantity of the coal dust that was deposited, the extent of the contamination that has persisted, or the amount of property damage that has resulted, those factual details will be elucidated through discovery. Construing the Complaint in the light most favorable to the Plaintiffs, the blanketing of their homes in coal dust may be sufficient to interfere with their interest in the exclusive possession of their land. Accordingly, Plaintiffs have stated a plausible claim for trespass, and CSX's Motion to Dismiss is **DENIED** as to Count II.

### III.   Nuisance

In Count III, Plaintiffs allege that the release of chemicals from Curtis Bay substantially interfered with their ability to use and enjoy their property. (*Id.* ¶¶ 47–52.) A private nuisance consists of "a nontrespassory invasion of another's interest in the private use and enjoyment of land." *Albright*, 71 A.3d at 94 (quoting *Wietzke v. Chesapeake Conf. Ass'n*, 26 A.3d 931, 943 (2011))). "Not every interference with a plaintiff's enjoyment and use of land, however, will support a cause of action for nuisance." *Id.* (citing *Washington Suburban Sanitary Comm'n v. CAE-Link Corp.*, 622 A.2d 745, 749 (Md. 1993)). "To succeed on a nuisance claim, a plaintiff must establish an unreasonable and substantial interference with his or her use and enjoyment of his or her property, such that the injury is 'of such a character as to diminish materially the value of the property as a dwelling . . . and seriously interfere with the ordinary comfort and enjoyment of it.'" *Id.* (quoting *Washington Suburban Sanitary Comm'n*, 622 A.2d at 759). This evaluation ordinarily requires "a balance of the competing property interests at stake." *Wietzke*, 26 A.3d at 948.

Plaintiffs claim that CSX's operation of the Curtis Bay Facility caused a nuisance in the form of "the release of dangerous and carcinogenic chemicals and noxious odors into the surrounding community and the Class Area." (Compl. ¶ 55.) They argue that the release of these chemicals has caused "substantial and unreasonable impacts including discomfort" that interfere with their ability "to fully and safely use and enjoy their property." (*Id.* ¶ 56; *see also id.* ¶¶ 70–72 (discussing the myriad health risks created by "the migration of dangerous and carcinogenic substances" into "the ambient air on their properties").) Finally, they contend that this interference has diminished the value of their property, and that it "outweighs any social utility that Defendant's actions and operations may have." (*Id.* ¶¶ 58, 71.) Viewing the Complaint collectively, Plaintiffs' allegation that the explosion at Curtis Bay contaminated their properties with carcinogenic contaminants and noxious odors is sufficient to plausibly plead an invasion of the use and enjoyment of Plaintiffs' land.

CSX argues that it has acquired a prescriptive right to maintain the alleged nuisance. "To acquire by prescription the right to maintain a private nuisance, the user must continue the nuisance for an uninterrupted period of twenty years." *Goldstein v. Potomac Elec. Power Co.*, 404 A.2d 1064, 1066 n.1 (Md. 1979) (citing *Susquehanna Fertilizer Co. v. Malone*, 20 A. 900, 902 (Md. 1890)). Once the twenty-year prescriptive period has elapsed, a plaintiff cannot maintain a nuisance action as a matter of law. *Litz*, 76 A.3d at 1088. Both parties acknowledge that the Curtis Bay Facility, which first opened in 1900 for use in transloading, has been in operation for more than 120 years. *See, e.g., Baker-Whiteley Coal Co. v. Balt. & Ohio R.R. Co.*, 188 F. 405, 407 (4th Cir. 1911) (noting that the Curtis Bay Facility was constructed in the year 1900 and received its first coal shipments for transloading in year 1901). Consequently, CSX claims that

14

it has acquired a right to operate the facility, even if Plaintiffs have otherwise stated a claim for nuisance under Maryland law.[7]

CSX's argument is premature. "In asserting prescriptive rights, '[t]he burden of proof is on the claimant of the use to show that it has had the character and is of the duration required by the law.'" *Clickner v. Magothy River Assoc., Inc.*, 35 A.3d 464, 480 (Md. 2012) (quoting *Dalton v. Real Est. & Improvement Co. of Balt. City*, 92 A.2d 585, 588 (1952)). Although the Curtis Bay Facility is undoubtedly more than twenty years old, its age alone does not end the inquiry. To establish a right by prescription, the defendant must also show that the challenged use was sufficiently continuous and uninterrupted, *Goldstein*, 404 A.2d at 1066, *Clickner*, 35 A.3d at 479, and that the plaintiffs had actual or constructive notice of the nuisance when they purchased their properties, *Hoffman*, 671 A.2d at 137–38. The Complaint does not conclusively establish either of these elements. For example, the Complaint contains no allegations from which this Court may infer that the Curtis Bay Facility has been used continuously since 1900, or that the specific use Plaintiffs complain of—the emission of dangerous and carcinogenic chemicals— was apparent to the class members at the time they purchased or rented their homes. At this stage in the litigation, when all allegations must be viewed in the light most favorable to the Plaintiffs, this Court cannot draw such inferences in the defendant's favor.[8]

---

[7] Plaintiffs argue in their Response in Opposition that a right by prescription extends only to permanent nuisances, rather than temporary nuisances. (Pls.' Resp. Opp. 10–11.) This is incorrect as a matter of law. A defendant obtains a prescriptive right to maintain a temporary nuisance once the twenty-year prescriptive period has elapsed since the plaintiff first had notice of the invasion that occasioned the nuisance. *See Goldstein*, 404 A.2d at 1072 n.4 ("[W]here the nuisance sued upon is only temporary, successive actions may be brought for damages for each invasion of the plaintiff's land until the period of prescription has elapsed.").

[8] In the alternative, CSX also characterizes the explosion and pollution itself as the nuisance, arguing that "coal dust emissions following CSX's explosion caused . . . a continuous invasion of Plaintiffs' property rights." (Pls.' Resp. Opp. 11.) Defendants correctly reply that the tort of nuisance

The defendant's remaining counterarguments have little merit. CSX argues that the trespass and nuisance claims are mutually exclusive—that as Plaintiffs allege a *trespassory invasion* through the emission of coal dust, they cannot simultaneously allege a *nontrespassory invasion*. (Def.'s Mem. Supp. 7.) But the critical inquiry is whether the alleged nuisance interfered with Plaintiffs' use and enjoyment of their land, not whether it involved a tangible, physical impact. *See Exxon Corp. v. Yarema*, 516 A.2d 990, 1002 (Md. Ct. Spec. App. 1986) ("The tort of nuisance should be viewed as a disturbance of some right or interest in land which *may or may not* involve some physical invasion of plaintiff's property." (emphasis added)); *see also* Restatement (Second) of Torts § 821D cmt. e ("[T]he fact that [a nuisance] arises out of or is accompanied by a trespass will not prevent recovery for the nuisance, and the action may be maintained upon either basis as the plaintiff elects or both."). Here, Plaintiffs plausibly allege both theories: They allege a trespass on account of the noxious coal dust deposited onto their properties, and they allege a nuisance on account of the contamination and odors that permeated the air and interfered with their use and enjoyment of the land.

Finally, CSX argues that the Complaint does not explain how the alleged contamination "diminished materially" the value of Plaintiffs' property as a dwelling. (Def.'s Mem. Supp. 7.) *Washington Suburban Sanitary Comm'n*, 622 A.2d at 759. However, Plaintiffs are not required to allege a certain level of property damage in order to state a nuisance claim. Rather, the relevant inquiry is whether the alleged nuisance is "*of such a character* as to diminish materially the value

typically requires "the element of an ongoing phenomenon consisting of some recurrent act or acts and/or a continuous condition." *State of Md., Dep't of Nat. Res. v. Amerada Hess Corp.*, 350 F. Supp. 1060, 1068 (D. Md. 1972) (collecting cases). However, Plaintiffs' allegations that the toxic chemicals "settled and . . . continue to require cleanup" is sufficient to plausibly allege that the effects of the explosion are ongoing, rather than discrete. (*See* Compl. ¶ 27.)

16

of the property as a dwelling . . . and seriously interfere with the ordinary comfort and enjoyment of it." *Id.* (emphasis added). In other words, whether the release of toxic chemicals from Curtis Bay constitutes a nuisance depends on the nature of the defendant's activity and its impact on the plaintiffs' use and enjoyment of the land, not on how much damage it caused. In this case, where Plaintiffs claim that their land was contaminated with "carcinogenic chemicals," that the air was profuse with "noxious odors," and that these conditions have not been fully remediated, the character of the nuisance has been plausibly alleged. (Compl. ¶ 55.)[9] Accordingly, Defendants' Motion to Dismiss is **DENIED** as to Count III.

## IV.  Strict Liability for Abnormally Dangerous Activities

The Supreme Court of Maryland has recognized the doctrine of strict liability for abnormally dangerous activities. *Toms v. Calvary Assembly of God, Inc.*, 132 A.3d 866, 871 (Md. 2016) (citing *Yommer v. McKenzie*, 257 A.2d 138, 139 (Md. 1969)). The Maryland courts have adopted the general principle from the Restatement (Second) of Torts § 519, which states that "[o]ne who carries on an abnormally dangerous activity is subject to liability for harm to the person, land or chattels of another resulting from the activity, although he has exercised the utmost care to prevent the harm." *Gallagher v. H.V. Pierhomes, LLC*, 957 A.2d 628, 634 (Md. 2008) (quoting Restatement (Second) of Torts § 519 (1977)). To determine whether an activity is "abnormally dangerous," courts examine the six factors enumerated in Section 520 of the Restatement (Second) of Torts. *Toms*, 132 A.3d at 871–72. These factors include:

---

[9] Moreover, Plaintiffs allege elsewhere in the Complaint that their property value was in fact diminished by the pollution that blanketed their homes. (Compl. ¶¶ 46, 51, 71.) Construed in the light most favorable to Plaintiffs, this allegation may be read to imply that the damage to Plaintiffs' property was sufficiently "material" to sustain a nuisance claim.

(a) existence of a high degree of risk of some harm to the person, land or chattels of others;
(b) likelihood that the harm that results from it will be great;
(c) inability to eliminate the risk by the exercise of reasonable care;
(d) extent to which the activity is not a matter of common usage;
(e) inappropriateness of the activity to the place where it is carried on; and
(f) extent to which its value to the community is outweighed by its dangerous attributes.

Restatement (Second) of Torts § 520 (1977). "The thrust of the doctrine is that the activity be abnormally dangerous in relation to the area where it occurs." *Toms*, 132 A.3d at 872 (quoting *Kelley v. R.G. Indus., Inc.*, 497 A.2d 1143, 1146 (Md. 1985)). Accordingly, "the appropriateness of the activity in the particular place [is] the most crucial factor." *Id.* (quoting *Kirby v. Hylton*, 443 A.2d 640, 645 (Md. Ct. Spec. App. 1982)); *see also Yommer*, 257 A.2d at 141 ("We accept the test of appropriateness as the proper one: that the unusual, the excessive, the extravagant, the bizarre are likely to be non-natural uses which lead to strict liability.").

Plaintiffs allege that the collection and handling of flammable coal directly adjacent to a residential neighborhood qualifies as an abnormally dangerous activity under Maryland law. The Complaint provides that Curtis Bay facilitates "[t]he collection, migration, management and handling of flammable coal and related materials," and that it is "located directly adjacent to a residential neighborhood" in which the Plaintiffs and the unnamed class members reside. (Compl. ¶¶ 61–62.) Plaintiffs further allege that the Facility's operations involve risks of "serious medical injury and the development of disease or death," (*id.* ¶¶ 63–64), that they are not matters of common usage, (*id.* ¶ 66), that the risks to the surrounding community cannot be eliminated through the exercise of reasonable care, (*id.* ¶ 65), and that those risks outweigh any perceived benefits conferred by the facility's operations, (*id.* ¶ 67).

18

At this early stage, these allegations are sufficient to state a plausible strict liability claim. The essence of Plaintiffs' claim is that CSX is operating an industrial facility that stores and handles flammable, carcinogenic materials "directly adjacent" to a residential neighborhood. Other courts have reasoned that similar activities may be "abnormally dangerous" when they are carried out in a populated area. *See, e.g.*, *Yommer*, 257 A.2d at 141 (applying strict liability to storage of "large quantities of gasoline immediately adjacent to a private residence"); *McLane v. Nw. Natural Gas*, 467 P.2d 635, 637–38 (Or. 1970) (applying strict liability to storage of large amounts of methane gas in a populated area). The Complaint's allegation that pollution from Curtis Bay causes a host of serious medical problems plausibly suggests that the harm resulting from a release of contaminants would be substantial, *Toms*, 132 A.3d at 872, and the Facility's proximity to a residential neighborhood suggests that the defendant's "activity [is] abnormally dangerous in relation to the area where it occurs." *Id.*

CSX urges this Court to weigh the factors differently. The defendant argues that Curtis Bay is located in an area zoned for industrial use, that the Facility has seen only one explosion in the past 120 years, and that the coal transferred at the facility has substantial benefits for the state and national economy. *Cf. Nat'l Tel. Co-op. Ass'n v. Exxon Corp.*, 38 F. Supp. 2d 1, 8 (D.D.C. 1998) ("When USTs are buried beneath gasoline stations located in commercial settings, the overwhelming majority of courts have concluded that such conduct is not 'abnormally dangerous.'"); *see also Wheeler*, 697 A.2d at 903 n.6. However, these details are not set forth in the Complaint, and may not be construed or inferred in the defendant's favor.[10]

---

[10] Similarly, Defendants argue that this Count should be dismissed as a matter of law under the common carrier exception in Second 521 of the Restatement (Second) of Torts, which exempts common carriers from strict liability for materials they transport in accordance with a public duty. *See*

Although the Complaint is light on details regarding the likelihood of the harm, the ability to mitigate risk, and value to the community, these factors may be developed through discovery. For now, Plaintiffs' allegations in support of "the most crucial factor" under § 520 are enough to state a plausible claim. *Toms*, 132 A.3d at 872 (citation omitted). Accordingly, Defendant's Motion to Dismiss is **DENIED** as to Count IV.

### V.    Classwide Allegations

As an alternative to dismissing the Complaint, CSX seeks the dismissal of all classwide allegations. "[S]everal circuits, including the Fourth Circuit in an unpublished table decision, have found that Rule 23 permits defendants to file preemptive motions to deny certification before discovery is completed." *Williams v. Potomac Family Dining Grp. Operating Co., LLC*, No. GJH-19-1780, 2019 WL 5309628, at *4 (D. Md. Oct. 21, 2019) (collecting cases). However, "[i]t is seldom, if ever, possible to resolve class representation questions from the pleadings." *Int'l Woodworkers of Am., AFL-CIO, CLC v. Chesapeake Bay Plywood Corp.*, 659 F.2d 1259, 1268 (4th Cir. 1981). That is because "a ruling on class certification should normally be based on 'more information than the complaint itself affords,'" after conducting "'a rigorous analysis of the particular facts of the case.'" *Bryant v. Food Lion, Inc.*, 774 F. Supp. 1484, 1495 (D.S.C. 1991) (quoting *Doctor v. Seaboard Coast Lines R.R. Co.*, 540 F.2d 699, 707 (4th Cir. 1976); *In re A.H. Robins Co.*, 880 F.2d 709, 728 (4th Cir.), *cert. denied sub nom. Anderson v. Aetna Cas. & Surety Co.*, 493 U.S. 959 (1989)).

---

*BNSF Ry. Co. v. Eddy*, 459 P.3d 857, 873 (Mont. 2020) ("[A] majority of jurisdictions that have adopted §§ 519 and 520 have also adopted § 521's common carrier exception."). However, such an argument would be premature at this stage in the litigation, as it would require this Court to draw inferences in favor of CSX regarding the scope of its common carrier duties and the nature of its operations at the Curtis Bay Facility. In any case, no Maryland court has yet adopted this exception.

Courts have "coalesced around a broad understanding of when granting such motions is proper, holding that class allegations should generally be struck before the completion of discovery only when it is apparent from the face of the complaint that 'the requirements for maintaining a class action cannot be met.'" *Williams*, 2019 WL 5309628, at *5 (quoting *Landsman & Funk PC v. Skinder-Strauss Assocs.*, 640 F.3d 72, 93 n.30 (3d Cir. 2011)). Accordingly, when a defendant moves to dismiss classwide allegations prior to discovery, their motion may be granted only if "it is clear from the face of the complaint that the plaintiff cannot and could not meet Rule 23's requirements for certification because the plaintiff has 'fail[ed] to properly allege facts sufficient to make out a class' or 'could establish no facts to make out a class.'" *Id.* at *4 (quoting *Bessette v. Avco Fin. Servs.*, 279 B.R. 442, 450 (D.R.I. 2002)). In such a situation, the standard of review is identical to that under Rule 12(b)(6), governing dismissal for failure to state a claim. *Id.*

Plaintiffs seek to bring claims on behalf of a class that includes all persons who resided in a "class area" defined and bounded by a highlighted screenshot embedded in the Complaint. (Compl. ¶ 29.) First, CSX insists that this class definition is conclusory, as Plaintiffs offer no factual allegations to support the conclusion that dust from the explosion spread throughout this area—such as "how far the coal dust traveled, in what direction it traveled, or how broad or narrow an area it covered." (Def.'s Mem. Supp. 13–15.) However, the Complaint alleges that contaminants released by the explosion migrated into the class area, (Compl. ¶¶ 42, 55), defines the affected area by geographical boundaries highlighted in the screenshot, (*id.* ¶ 29), and claims that the unnamed class members reside on real property within this area, (*id.* ¶ 24). These are precisely the allegations that CSX insists are lacking. To require additional details—

such as the specific properties that were affected by the pollution, the prevailing winds on the day of the explosion, or the exact number of affected class members—would preempt the class discovery process.[11] Such granular specifics ordinarily require the type of expert analysis that could only be developed through discovery.

Second, CSX argues that the Plaintiffs cannot establish typicality or adequacy, as unnamed class members may possess different property rights and be subject to variable levels of exposure. (*Id.* at 16–17.) Ordinarily, to establish typicality, "a class representative must be part of the class and 'possess the same interest and suffer the same injury' as the class members." *Broussard v. Meineke Discount Muffler Shops, Inc.*, 155 F.3d 331, 338 (4th Cir. 1998) (quoting *East Texas Motor Freight Sys. Inc. v. Rodriguez*, 431 U.S. 395, 403 (1977)). However, as Judge Blake of this Court has noted, "[f]actual differences do not necessarily render a claim atypical [provided that] the claims [are] based on the same course of conduct and legal theory." *Gresser v. Wells Fargo Bank, N.A.*, No. CCB-12-987, 2014 WL 1320092, at *2 (D. Md. Mar. 31, 2014) (citing *Minter v. Wells Fargo Bank, N.A.*, 279 F.R.D. 320, 325 (D. Md. 2012)); *accord Hewlett v. Premier Salons Int'l, Inc.*, 185 F.R.D. 211, 217 (D. Md. 1997) ("A plaintiff's claim may differ factually and still be typical if 'it arises from the same event or practice or course of conduct that gives rise to the claims of other class members, and if his or her claims are based on the

---

[11] The level of granularity that CSX demands is unnecessary even at the class certification stage. That is because the "goal" of certification is not to "identify every class member," but rather, "to define [the] class in such a way as to ensure that there will be some 'administratively feasible [way] for the court to determine whether a particular individual is a member at some point.'" *Krakauer v. Dish Network, L.L.C.*, 925 F.3d 643, 658 (4th Cir. 2019) (quoting 7A Charles Alan Wright et al., Fed. Prac. & Proc. § 1760 (3d ed. 2005)) (alteration in original). Accordingly, Plaintiffs are not required to list every class member and set forth a detailed articulation of their injuries before they have had an opportunity to conduct classwide discovery. At this stage, they need only show that the proposed class is capable of certification.

same legal theory.'"). The Complaint indicates that all putative class members, including the named Plaintiffs, bring identical tort claims based on a single course of conduct: the explosion at Curtis Bay. Accordingly, CSX has not shown that typicality is impossible to satisfy merely on account of factual differences that have not yet emerged.[12]

Third, CSX argues that Plaintiffs cannot prove the predominance of common issues, as property damage and medical monitoring requires "painstaking individualized fact-finding" specific to each class member. (Def.'s Mem. Supp. 15–17.) Again, this argument is premature. Certification only requires that damages are "capable of measurement on a classwide basis" through "a common, classwide *method* for determining individual damages," not that all class members have suffered identical levels of harm, or that damages must be calculated classwide. *In re Marriott Int'l, Inc., Consumer Data Sec. Breach Litig.*, 341 F.R.D. 128, 161 (D. Md. 2022) (quoting *Comcast Corp. v. Behrend*, 569 U.S. 27, 34 (2013)). It is possible that the putative class members experienced different levels of exposure to coal dust and associated contamination, and it is true that "medical monitoring classes suffer from cohesion difficulties." *In re St. Jude Med., Inc.*, 425 F.3d 1116, 1122 (8th Cir. 2005); *see also Gates v. Rohm & Haas Co.*, 655 F.3d 255, 270 (3d Cir. 2011) ("Courts have generally denied certification of medical monitoring classes when individual questions involving causation and damages predominate over (and are more complex than) common issues such as whether defendants released the offending chemical

---

[12] Additionally, as Plaintiffs note in their Response in Opposition, Rule 23(d) "'authorize[s] a class action court to create subclasses for management purposes' and 'expedite resolution of the case by segregating a distinct legal issue that is common to some members of the existing class.'" *Peters v. Aetna Inc.*, 2 F.4th 199, 244 (4th Cir. 2021) (citation omitted). Proposed classes are routinely limited or divided into subclasses to address typicality, commonality, and predominance concerns. *E.g., Titanium Dioxide Antitrust Litig.*, 962 F. Supp. 2d 840, 863 (D. Md. 2013). CSX offers no explanation for why subclass treatment would not be a manageable alternative if the class members possess such divergent property rights and levels of exposure as to interfere with adjudication as a single, cohesive class.

into the environment."). But CSX fails to show that "the requirements for maintaining a class action cannot be met" based solely on these potential variations. *Williams*, 2019 WL 5309628, at *5. If discovery reveals that the spread of the pollution was distributed in a uniform or consistent manner, it is plausible that classwide formulas or models may be used to determine individual damages based on the degree of exposure suffered by each putative class member.

Finally, CSX argues that the trespass and nuisance claims are specifically unsuitable for class treatment, as either theory will inevitably require this court to conduct an individualized inquiry into the extent of the defendant's interference with the class members' property rights. (Def.'s Mem. Supp. 18–21.) *See, e.g.*, *Lautemann v. Bird Rides, Inc.*, No. CV 18-10049 PA (RAOx), 2019 WL 3037934, at *7 (C.D. Cal. May 31, 2019); *Powell v. Tosh*, No. 5;09-CV-00121, 2013 WL 4418531, at *8 (W.D. Ky. Aug. 2, 2013) (declining to certify nuisance classes based on individualization and cohesiveness issues). However, many courts have certified class actions in environmental cases based on the idea that the common issue of the defendant's liability may be resolved on a classwide basis. *See, e.g.*, *Freeman v. Grain Processing Corp.*, 895 N.W.2d 105, 129 (Iowa 2017) (certifying nuisance class in environmental action based on air dispersion); *Jackson v. Unocal Corp.*, 262 P.3d 874, 890 (Colo. 2011) (en banc) (holding that common issue of asbestos contamination predominated despite the need for individual damages inquiries); *Navelski v. Int'l Paper Co.*, 244 F. Supp. 3d 1275, 1309 (N.D. Fla. 2017) (certifying nuisance class in environmental claim based on flooding following the collapse of a dam, and reasoning that "every aspect of liability can be resolved on a class-wide basis").

At this early stage, the same logic is applicable here. Plaintiffs' claims stem from a single tortious event: the explosion at Curtis Bay that spread coal dust across the class area and

contaminated the class members' properties. As alleged in the Complaint, the central questions of liability stemming from this incident are all plausibly susceptible to classwide adjudication— including whether the activities conducted at Curtis Bay are abnormally dangerous, whether the defendant was negligent in operating the facility, and whether the explosion and its fallout interfered with class members' rights to exclusive possession of their properties or the use and enjoyment of their land. Pre-certification discovery will reveal whether the class members' damages are so divergent as to require subclass treatment or to preclude certification entirely. For now, as CSX cannot show "from the face of the complaint that the plaintiff cannot and could not meet Rule 23's requirements for certification," *Williams*, 2019 WL 5309628, at *5, CSX's Motion to Dismiss (ECF No. 23) is **DENIED.**

## CONCLUSION

For the foregoing reasons, Defendant CSX Transportation, Inc.'s Motion to Dismiss (ECF No. 23) is hereby **DENIED.**

A separate order follows.

Date: June 14, 2023

_____/s/_____
Richard D. Bennett
United States Senior District Judge